**Betty GARBARINO, as Administratrix of the Estate of Edward J. Garbarino, deceased, and individually, Plaintiff-Appellant.**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 80–1227.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1981.

Decided Dec. 24, 1981.

**1062**

Marvin L. Berris, Zeff & Zeff, Patrick Bruetsch, Detroit, Mich., for plaintiff-appellant.

William D. Blakely, Civ. Div., Torts Branch, U. S. Dept. of Justice, Washington, D. C., James K. Robinson, U. S. Atty., Detroit, Mich., for defendant-appellee.

Before KEITH and MERRITT, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an appeal from a summary judgment dismissing a complaint brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*

On June 4, 1974, the plaintiff-appellant's decedent was a passenger in a Cessna 177 airplane which crashed shortly after take-off from the city airport in Detroit, Michigan. The decedent, Edward J. Garbarino, was burned severely in the crash and died several days later.

In June 1978, appellant, as administratrix of Mr. Garbarino's estate, brought an action in a Michigan State court against the owner and the manufacturer of the airplane, and the present action in the district court against the United States.[1] In both actions the appellant sought damages for the wrongful death of Mr. Garbarino.

---

1. Before commencing the action against the United States, the appellant presented a claim for money damages for the wrongful death of Mr. Garbarino to the Federal Aviation Administration as required by 28 U.S.C. § 2675. The agency failed to make a disposition of the claim within six months and, therefore, was deemed to have denied finally the claim for purposes of that statute's jurisdictional prerequisites.

The first count of the complaint in the district court alleged negligent conduct of federal air traffic controllers. That count was voluntarily dismissed. The second count alleged that the United States, through the Federal Aviation Agency, negligently certified the Cessna 177 for airworthiness. Specifically, the appellant alleged that the FAA was negligent in:

a) failing to inspect and test said aircraft for crashworthiness;

b) failing to inspect and test said aircraft adequately for crashworthiness such as would reveal deficient and inadequate parts to wit: the fuel tank assembly and placement of said assembly which could not be jettisoned in an emergency situation so as not to endanger the occupants of said aircraft;

c) failing to test and inspect said aircraft for airworthiness and deficient and inadequate parts, to wit: the defective stabilator assembly, and stall warning system;

d) failing to test and inspect said aircraft for design defects, to wit: defective wing design, and ability to recover from a stall situation;

e) failing to determine that the design of said aircraft, and in particular the fuel tank assembly and fuel line system, would upon impact cause or enhance expected injuries.

The Government answered the complaint with a general denial of the allegations and the assertion of several affirmative defenses. On November 27, 1979, the Government moved for summary judgment and asserted that the appellant's action was barred by the misrepresentation exception, 28 U.S.C. § 2680(h), and the discretionary function exception, 28 U.S.C. § 2680(a), to the Federal Tort Claims Act (FTCA).

On January 31, 1980, District Judge Julian Abele Cook, Jr., granted the motion for summary judgment. He held that the discretionary function exception barred the claim that the Government failed to consider the doctrine of crashworthiness in its promulgation of airworthiness regulations. He held further that the misrepresentation exception barred the claim that the Government negligently inspected and certified the airplane in issuing an airworthiness certificate.

This appeal followed. The jurisdiction of this court is invoked under 28 U.S.C. § 1291. We affirm for the reasons set out in this opinion.

## I

Under the Federal Aviation Act of 1958, 49 U.S.C. § 1301 *et seq.*:

(a) The Administrator is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:

(1) Such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft, aircraft engines, and propellers as may be required in the interest of safety;

(2) Such minimum standards governing appliances as may be required in the interest of safety;

(3) Reasonable rules and regulations and minimum standards governing, in the interest of safety, (A) the inspection, servicing, and overhaul of aircraft, aircraft engines, propellers, and appliances; (B) the equipment and facilities for such inspection, servicing, and overhaul; and (C) in the discretion of the Administrator, the periods for, and the manner in, which such inspection, servicing, and overhaul shall be made, including provision for examinations and reports by properly qualified private persons whose examinations or reports the Administrator may accept in lieu of those made by its officers and employees;

(4) Reasonable rules and regulations governing the reserve supply of aircraft, aircraft engines, propellers, appliances, and aircraft fuel and oil, required in the interest of safety, including the reserve supply of aircraft fuel and oil which shall be carried in flight;

(5) Reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, and other employees, of air carriers; and

(6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Administrator may find necessary to provide adequately for national security and safety in air commerce.

49 U.S.C. § 1421(a)(1)–(6).

The Administrator is empowered to issue type certificates for aircraft, aircraft engines and propellers after testing to determine whether the aircraft and the equipment meet minimum standards for safe operation. 49 U.S.C. § 1423(a). If the Administrator determines that duplicates of the prototype will conform to the type certificate, a production certificate for the aircraft will be issued to the manufacturer. *Id.* at § 1423(b). If the Administrator determines that an individual aircraft conforms to the standards prescribed in the type and production certificates, an airworthiness certificate will issue for the individual aircraft. *Id.* at § 1423(c). Apparently the responsibility for the inspection of the individual aircraft often is delegated to the manufacturer. Cessna performed the airworthiness inspection of the aircraft in which Mr. Garbarino was fatally injured.

The FAA regulations promulgated pursuant to the above authority are contained in 14 C.F.R. parts 21 and 23. Part 21 covers the procedural requirements for the issuance of airworthiness, type and production certificates. Part 23 sets out the minimum standards that small aircraft, such as the Cessna 177 in this case, must satisfy before a type certificate will be issued.

Appellant contends that the FAA was negligent in failing to promulgate regulations which would have required a test for "crashworthiness" in the certification procedure. She asserts that an essential element in determining the safety of any moving vehicle is the doctrine of crashworthiness. Second, she charges that the Government was negligent in its inspection of the Cessna aircraft in which the FAA determined that the airplane satisfied existing regulations for the issuance of an airworthiness certificate.

## II

The Federal Tort Claims Act was enacted by the 79th Congress in 1946. Before this statute was passed, the only relief available against the Government for substantial claims growing out of the torts of its employees acting within the scope of their employment was the passage of a private bill through Congress. "[T]he private bill device was notoriously clumsy." *Dalehite v. United States*, 346 U.S. 15, 24–25, 73 S.Ct. 956, 962, 97 L.Ed. 1427 (1953). This Act waived the Government's sovereign immunity to the extent set forth therein and afforded access to the federal courts for the torts to which it applied.

The Act was not a total waiver of sovereign immunity. It was aimed primarily at the "ordinary common-law torts." *Dalehite, supra,* 346 U.S. at 28, 73 S.Ct. at 964. 28 U.S.C. § 2680 excludes several types of claims from the coverage of the Act.

The following claims, *inter alia,* are exempt from the coverage of the Act:

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\*      \*      \*      \*      \*      \*

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights:

(Emphasis added.) 28 U.S.C. § 2680(a) & (h).

The United States can be sued only to the extent that it has waived sovereign immunity. If one of the Act's exceptions applies to a claim for relief against the Government, that claim cannot be maintained under the FTCA. *See United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Dalehite, supra*, 346 U.S. at 30–31, 73 S.Ct. at 965.

### III

28 U.S.C. § 2680(a), set out above, is the "discretionary function" exception. This court discussed the exception in *Reminga v. United States*, 631 F.2d 449 (6th Cir. 1980). In *Reminga*, Judge Lively analyzed the decisions of this and other courts which have considered the types of governmental activities to which the exception applies. He pointed out:

> It appears that this court has consistently held that the discretionary function exception does not apply to day-to-day decisions made by government employees in the field, * * * but does bar liability based on "deliberate official decisions and directives," * * * failure of a regulatory agency to meet particular requirements desired by a member of the public when the desired action is not explicitly required by statute or regulation, * * * and decisions generally which have "policy overtones."

(Citations omitted) 631 F.2d at 456.

The exception has been held not to be applicable to a claim that an air traffic controller gave negligent directions to an airplane pilot. *See, e.g., Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967). The exception does bar claims that the United States is liable for the failure of its officials "to impose a more strict set of air safety regulations," *Miller v. United States*, 522 F.2d 386, 387 (6th Cir. 1975), or for the failure of FAA to promulgate rules and regulations which promote the safety of hang gliders. *Fielder v. United States*, 423 F.Supp. 77 (C.D.Cal.1976).

The appellant's claim that the FAA was negligent in failing to promulgate crashworthiness regulations clearly is barred by the "discretionary function" exception to the FTCA. 49 U.S.C. § 1421(a)(1)–(6) outlines the general areas in which regulations are to be promulgated, but the particulars are left to the discretion of the Administrator. The statute requires only that the Administrator prescribe such minimum standards as may be required in the interests of safety. Deciding what those standards are to be, and whether such standards are to include crashworthiness criteria, is the type of policy decision that falls squarely within the discretionary function exception. *See Schindler v. United States*, 661 F.2d 552 (6th Cir. 1981).

Our reading of the FAA regulations convinces us that the FAA *has* considered the question of aircraft crashworthiness and *has* promulgated applicable regulations. *See, e.g.*, 14 C.F.R. §§ 23.561, 23.785, 23.787, 23.807. There also are regulations which prescribe the standards for fire protection in airplanes of the type involved in this proceeding. 14 C.F.R. §§ 23.853, 23.859, 23.863, 23.865.

We conclude that appellant's claims that are based upon the alleged failure of FAA to promulgate crashworthiness regulations are wholly without merit.

### IV

We further conclude that the discretionary function exception also bars that portion of the claim based on the decision of the FAA to delegate inspection duties to an inspection department of the manufacturer. We do not reach the issue of the application of the misrepresentation exception. The FAA has decided not to operate an inspection bureau to insure the safety of aircraft as they come off the assembly line or after they are in service. Cessna, not the FAA, made the inspection in the present case. The principle of owner responsibility for compliance with safety rules applies to both commercial and general aviation aircraft, and FAA adoption of such a principle falls within the discretionary function exception.

The question then becomes whether the FAA, having imposed upon others periodic inspection requirements during the life of an aircraft, is responsible in damages when the inspection allegedly is negligently performed, causing injury. On this question we conclude that neither the discretionary function nor the misrepresentation exceptions are applicable. Another concept applies. Although the manufacturer, the airline or the mechanic may be liable for negligent inspection, the Government is not vicariously responsible under the doctrine of *respondeat superior* for the inspection activities of these private individuals and corporations.

In addition, there are sound policy considerations for not extending the Government's liability to situations involving the alleged negligent issuance of safety inspection certificates. The effect of holding that the FTCA authorizes suits in these situations would be to make the Government a joint insurer of all activity subject to safety inspection.

We agree with the following language of Chief Judge Coffin of the First Circuit in *Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978), which involved a situation similar to the case at bar:

> Certainly whether the Congress should take a more active role in providing compensation for the victims of air disasters is not an appropriate question for this court to decide. Moreover, to attempt to expand the relief available to victims and their families through the Federal Tort Claims Act in circumstances similar to those of this case would, we believe, have an unfortunate inhibiting effect on government safety measures. The end result of attaching liability to government attempts at all levels to supplement the safety precautions of private individuals and businesses, even when there is no reliance on the government's assistance, is far more likely to increase the reluctance of the government to involve itself in such matters than it is to install a higher quality of performance in the

federal employees assigned to carry such functions out. We do not believe that the expanded role of the federal government in the safety area through such legislation as OSHA indicates an intent of Congress to make the United States a joint insurer of all activity subject to inspection under that statute or others.

We conclude that, in enacting the Federal Tort Claims Act, Congress did not intend to subject the United States to liability under the facts of the present case.

The decision of the district court is affirmed. No costs are taxed. Each party will bear its own costs in this court.