**Jane Barber BROWN, individually and as Executrix of the Estate of James W. Brown, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–95–N.**

United States District Court, M.D. Alabama, N.D.

Sept. 15, 1983.

See also, 573 F.Supp. 740.

Ted Taylor, Tom Wright, Prattville, Ala., and Roger Morrow, Whitesell, Morrow & Romine, Montgomery, Ala., for plaintiff.

John C. Bell, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

This case arose out of the death of James W. Brown from lung cancer. Plaintiff Jane Barber Brown is the widow of James W. Brown and the executrix of his estate. Plaintiff's action is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. Section 1346 *et seq.* in which she claims that her husband died as a result of the negligence of the United States, through the Social Security Administration (SSA). This Court has jurisdiction pursuant to the FTCA. *Id.* Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court now enters its findings of fact and conclusions of law. For the reasons set out herein, the Court finds for the defendant United States and against plaintiff Brown.

## FINDINGS OF FACT

1. On October 31, 1978, the decedent James W. Brown went to the SSA office in Montgomery, Alabama to apply for disability insurance benefits due to a hearing loss. As part of the application process, Mr. Brown was examined by Dr. Bruce S. Trippe. Dr. Trippe had Mr. Brown x-rayed on December 11, 1978 and discovered a mass in his left lung which Dr. Trippe thought to be a malignant cancer.

2. Ms. Wanda Thomas, a disability examiner, had the responsibility of determining whether or not Mr. Brown was eligible for disability benefits after all the medical facts had been developed. Dr. Trippe informed Ms. Thomas on December 12, 1978 of the mass. Dr. Trippe's medical report also had in bold type that a mass had been found in Mr. Brown's left lung, but this report was not received by Ms. Thomas until January 4, 1979.

3. Ms. Thomas called the Brown family and obtained the name of Mr. Brown's doctor to whom the information would be sent. Ms. Thomas obtained the name from either Mrs. Brown or her daughter but declined to release any further information to either of them.

4. Having obtained all the medical information on Mr. Brown, Ms. Thomas reviewed his file and determined on January 9, 1979 that Mr. Brown's hearing loss did not make him eligible for disability benefits. On January 10 or 11, 1979, Dr. Demetrius Issos reviewed the file and agreed

with Ms. Thomas that Mr. Brown's hearing loss did not qualify him for disability benefits. Dr. Issos testified he did not see Dr. Trippe's medical report at the time he reviewed the file and does not know whether or not that report reflecting the mass in the lung was in the file. Dr. Issos reviews an average of two hundred-two hundred fifty files in a four-hour workday.

5. On January 12, 1979, Mr. Brown's file was sent to the Montgomery SSA office where it remained for approximately six months. The x-ray and report from Dr. Trippe were never sent to Mr. Brown's family doctor.

6. In August of 1979, Mr. Brown went to his family doctor complaining of congestion in the lung and shortness of breath. The mass was discovered and in November when a thorocotomy was performed, it was found that the malignancy was inoperable. Mr. Brown's family physician, Dr. Hugh MacGuire, gave his opinion that the cancer was operable in December of 1978 and that had the cancer been treated at that time Mr. Brown had a fair chance of recovery.

7. The United States, through the Department of Health, Education and Welfare, entered into a contractual agreement with the Alabama Department of Education whereby the state Disability Determination Section (DDS) would make the medical disability determinations for SSA. The DDS is reviewed by the SSA regional commissioner's office to see that DDS operates according to the rules, regulations, guidelines and contractual provisions of the SSA.

A manual published by SSA called the DIS Manual (DISM) sets forth specific regulations for the contracting state agency to follow and requires certain procedures to be implemented by the state agency in order to comport with various SSA regulations. Section 289.8B of the DISM provides:

> State DDS's should institute procedures which provide for prompt identification and referral of consultative examination reports to attending physicians where the examination turns up diagnostic information or test results which would be

of significance in the claimant's treatment. Referral to the claimant's treating source is particularly important where the information reveals a previously undiagnosed condition that may require immediate treatment.

8. Wanda Thomas, Dr. Trippe and Dr. Issos were all employees of the Alabama State Department of Education. This Court has previously held that plaintiff may not proceed against these individuals nor can the United States be liable for their acts. *See* Orders of October 6, 1981, April 26, 1982 and August 26, 1982.

## CONCLUSIONS OF LAW

In its order entered August 26, 1982 granting in part plaintiff's motion to amend her complaint, the Court set out the three theories asserted by plaintiff as a basis for liability against the United States. Plaintiff now lists fifteen theories of recovery, any one of which she claims entitles her to relief against the United States pursuant to FTCA. In plaintiff's post-trial brief she breaks down these fifteen theories into the three areas noted by the Court in August of 1982.

I. *Improper action in drafting guidelines, regulations, administrative procedures and review procedures.*

 Upon a review of plaintiff's theories of recovery in this area and the applicable law, the Court is of the opinion that Section 2680(a) of FTCA bars plaintiff from recovery. Section 2680(a) provides that the United States shall not be liable for

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

In *George v. United States*, 703 F.2d 90 (4th Cir.1983), the Court of Appeals for the

Fourth Circuit affirmed the district court's grant of summary judgment for the United States. The widow of a man who had been killed in an airplane crash sued the United States under the FTCA for the Federal Aviation Administration's approval of the aircraft's fuel system and for failing to warn of the damages of the fuel system. The Fourth Circuit agreed with the district court's interpretation that the complaint was merely alleging that her husband had died as the result of the United States failing to promulgate regulations that could have avoided the accident. The court reasoned that such an allegation is clearly within the exception to FTCA for discretionary acts.

In *Garbarino v. United States,* 666 F.2d 1061 (6th Cir.1981), the Court of Appeals for the Sixth Circuit was confronted with allegations that the FAA was negligent for failing to promulgate crashworthiness regulations; and for delegating its inspection duties to the aircraft manufacturer's inspection department. Noting case law which held that Section 2680(a)'s discretionary exception applies to allegations of failing to impose stricter regulations, or regulations at all, *id.* at 1065, the court found plaintiff's first claim barred by Section 2680(a). Similarly, the court also rejected plaintiff's second claim of negligent delegation as barred by the discretionary exception.

Plaintiff's theories of recovery concerning negligent drafting of guidelines are controlled by precedent such as *George* and *Garbarino.* Plaintiff's complaint in this respect is no more than an allegation that SSA standards or regulations fail to insure that applicants such as Mr. Brown receive medical information derived from application physicals. This claim is barred by Section 2680(a).

II. *The SSA Regional Commissioner's staff were negligent or wanton in reviewing the manner in which the Birmingham and the Montgomery offices were operated.*

■ Plaintiff lists ten theories of recovery under this category but in this Court's

opinion plaintiff is attempting to establish liability either by a claim that the SSA should have had a procedure by which the state DDSs were more closely scrutinized to insure that they were complying with all policies of the SSA; or that the SSA should have had a system of reviewing the individual files to insure that the state DDS made the correct determination and followed all procedures; including the one about relaying certain medical information to family physicians.

As in Part I of this opinion, this Court concludes that such claims are barred by Section 2680(a). Plaintiff has been unable to point to any SSA regulation that *it* has violated in regard to its overview of the manner in which the state DDSs operate. The most that can be said is that the Atlanta SSA office randomly inspected the state DDS office and some of its files. Plaintiff seems to suggest that if these inspections had been thorough, they would have revealed Dr. Issos and his sixty files-per-hour pace of reviewing the files. Plaintiff did not prove this, but more importantly, even if Dr. Issos had seen the report concerning the mass in Mr. Brown's lung, it would have added nothing to the knowledge of the state employee, Ms. Thomas. She knew of this condition and she knew that Mr. Brown's doctor was to be advised. State employees through negligence simply failed to perform this vital duty. Thus, the sole negligence in this case lies with the State of Alabama employees' failure to forward Mr. Brown's file or to relay the information about the cancer to his doctor. As already stated in this order and in prior orders, the United States cannot be held liable under the FTCA for the acts or omissions of independent contractors such as the State of Alabama, the Alabama Department of Education, the DDS or DDS employees. *See Hill v. Schweiker,* 532 F.Supp. 1014 (D.N.H.1982).

III. *The Montgomery SSA office was negligent or wanton in failing to inform Mr. Brown of his condition.*

■ .Plaintiff claims that Mr. Brown's file originated and was finally sent to the

Montgomery SSA office and that this fact placed a duty on that office to review his file, discover Dr. Trippe's medical report, and relay that information to Mr. Brown.

The evidence reveals that after all the medical information was compiled on Mr. Brown and the decision that he was not disabled was rendered by the DDS, the file was referred back to the Montgomery SSA office. An SSA employee then took the file and signed an input form which keyed the computer to send a denial notice to Mr. Brown. The file thereafter remained in that office for six months to allow for any appeal Mr. Brown might have made. The Montgomery SSA office did not review Dr. Trippe's report nor did it notify Mr. Brown of his lung cancer.

The Court again points out that this is merely a complaint that the SSA failed to have a regulation or procedure requiring SSA offices to review the medical information gathered and contact claimants if any information therein would be beneficial to his or her future treatment by a family physician. Such a policy was mandated by SSA in the DISM Section 289.8B. Any duty that this policy created was between DDS and SSA and did not create any duty owed by the SSA to the public. *See Clemente v. United States,* 567 F.2d 1140 (1st Cir.1977), *cert. den.,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). In hindsight no one can dispute plaintiff's claim that such a procedure or regulation might have saved Mr. Brown's life. But the fact remains that such a complaint is barred by the discretionary exception to the FTCA in Section 2680(a). *See e.g., George v. United States,* 703 F.2d 90 (4th Cir.1983). Moreover, there is a limit to the extent of the review that must be provided for the million or more social security claims generated each year even where hindsight may suggest that a second or third review procedure would have been effective to prevent tragedy in a particular case.

## CONCLUSION

This case demonstrates the tragic result of the failure of a state employee to follow a procedure that the state office recognized was to be followed under the circumstances. This Court has no doubt that the DDS had every intention of relaying the information about Mr. Brown's x-ray to his family physician. Apparently through some inadvertence neither the report nor the information was sent to Mr. Brown's doctor. The fault, however, does not lie with the United States but with the independent contractor. See 28 U.S.C. § 2680(a).

A separate judgment will be entered in accordance with this memorandum opinion.

## JUDGMENT

In accordance with the attached memorandum opinion, it is ORDERED, ADJUDGED and DECREED that plaintiff have and recover nothing from the defendant United States.

It is further ORDERED that the costs incurred in this proceeding be taxed against plaintiff, for which execution may issue.