**L. Kathleen PORTER, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. C–1–82–1298.

United States District Court, S.D. Ohio, W.D.

May 21, 1985.

138

James V. Heath, Milford, Ohio, Ronald D. Major, Cincinnati, Ohio, for plaintiffs.

D. Michael Poast, Richard M. Goehler, Cincinnati, Ohio, for Robinson Helicopter Co. and Franklin D. Robinson; D. Michael Poast, Frost & Jacobs, Cincinnati, Ohio, of counsel.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge:

This wrongful death case arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (1981). The United States has moved, pursuant to Rule 12(b)(1), Fed. R.Civ.P., to dismiss the claims against it based upon the Court's asserted lack of subject-matter jurisdiction (doc. 24); plaintiffs responded (doc. 26), and the government replied (doc. 28). We heard argument on the motion on May 2, 1985. Although, as developed below, we seriously question our jurisdiction based on procedural deficiencies with regard to the timing of the amended complaint, the question is close enough that we reach the merits of the government's motion. Because we find that the allegations against the government fall within the proscriptions of the discretionary function exception to the Tort Claims Act embodied in 28 U.S.C. § 2680 (1974), we grant the government's motion in its entirety.

### I. *Facts*

Plaintiff L. Kathleen Porter is the executrix of the estate of her late husband, Dr. Joseph Porter. On October 21, 1982, Dr. Porter was learning to fly a small helicopter manufactured by defendant Robinson Helicopter Company. The helicopter crashed, with Dr. Porter at the controls, and he was killed. At the time of the crash, Dr. Porter was hovering over a high school athletic field where his son, plaintiff Gary Porter, was participating in football practice. Plaintiffs allege, and we accept as true for purposes of resolving the instant motion, that the crash was caused by a design defect in the helicopter which caused the primary rotor to shear off the

tail cone, causing the craft to plummet to the ground.

Plaintiffs initially filed this action against Robinson Helicopter. In an amended complaint filed October 19, 1984, plaintiffs named the government as defendant, alleging negligence on the part of agents or employees of the Federal Aviation Administration. In particular, plaintiffs allege that

> [t]he defendant, the United States of America, acting through the Federal Aviation Administration, negligently and carelessly continued to certify the airworthiness and the production of the Robinson R–22 helicopter and negligently failed to suspend such certifications at a time when the FAA knew, or in the exercise of ordinary care, should have known of the defective and unsafe characteristics of the Robinson R–22 helicopter posed an immediate threat to the safety of the public.
>
> The [FAA] negligently and carelessly issued a production certificate to Robinson helicopter Company, Inc., and/or failed to suspend such certification at a time when the FAA knew, or in the exercise of due care should have known that the Robinson Helicopter Company, Inc., did not have liability insurance or the financial capacity or responsibility to respond in damages for injuries and deaths resulting from the defective and unsafe characteristics of the Robinson R–22 helicopter.

Doc. 7, Amended Complaint, at paragraphs 8–9. At hearing, plaintiffs' counsel sought in effect to orally supplement his complaint by alleging that there had been several accidents involving Robinson R–22 helicopters in the months prior to Dr. Porter's death, including one only three weeks before, and that the FAA had actual knowledge of these accidents, but failed to take steps to prevent use of already-manufactured R–22s. Counsel further alleged that the FAA did suspend the R–22 airworthiness certificate shortly after Dr. Porter's death. While we strongly disapprove of the practice of counsel's making oral representations not contained in the complaint and unsupported by affidavit or otherwise, we accept these allegations as constituting amendments to the amended complaint, and grant leave therefor. Rule 15(a), Fed. R.Civ.P.

II. *Administrative Procedure*

On May 2, 1984, plaintiffs filed an administrative claim with the Federal Aviation Administration, in compliance with 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States [under the Act] unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.... The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant ... be deemed a final denial of the claim for purposes of this section.

On October 19, 1984—two days before the second anniversary of Dr. Porter's death, on which date the relevant statute of limitations, Ohio Rev.Code Ann. § 2305.10 (Page's 1983) would have expired, but only some five and one-half months after the administrative filing—plaintiffs filed an amended complaint naming as additional defendants the United States, two Ohio companies, two Ohio individuals, and one John Doe.

The government filed its motion to dismiss on March 11, 1985. The principal basis for the motion is that we do not have subject-matter jurisdiction over the claims against the government because of the exception to the Act's waiver of sovereign immunity embodied in the second clause of 28 U.S.C. § 2680(a). Defendant parenthetically argues (doc. 24 at 2 n. *) that "[t]echnically, plaintiffs were premature in filing their Amended Complaint," because they failed to wait the full six months after filing their administrative claim required by the terms of § 2675(a). Plaintiffs did not address this assertion in their response, and when questioned on the point at argument, asserted that the government's posi-

tion simply elevated form over substance. In addition, counsel asserted that because the limitations period was about to expire, plaintiffs had no choice but to file prematurely.

A.

■ "It is a principle of first importance that the federal courts are courts of limited jurisdiction." C.A. Wright, *The Law of Federal Courts* 22 (4th Ed.1983). Thus, "the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of such a court." *Id.* It is firmly established that the provisions of § 2675(a) are jurisdictional, *e.g., Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir.1980); *Shelton v. United States,* 615 F.2d 713, 714 (6th Cir.1980). Because the issue is one of a limited waiver of sovereign immunity, the issue is particularly sensitive:

It is well settled that the United States, as sovereign, is immune from suit except as it consents to be sued and that the terms of its consent to be sued in any court define the court's jurisdiction to entertain the action.

*Rosario v. American Export-Isbrandtsen Lines, Inc.,* 531 F.2d 1227, 1230–31 (3d Cir.), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), *citing United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Thus, we cannot agree with plaintiffs that the question is merely a technicality.

In *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir.1982) (*per curiam*), the court affirmed the district court's dismissal of a claim under the Act as time-barred where the plaintiff did not know within the limitations period that an alleged tort-feasor was acting within the scope of government employment at the time of an accident. The case was initially filed in state court; the government removed it pursuant to 28 U.S.C. § 2679, and successfully moved to dismiss under § 2675(a) for failure to proceed administratively. Plaintiff argued that if the government knew that the tort-feasor was acting within the scope of his employment, but failed to notify plaintiff, it

should be estopped from requiring a timely administrative claim.

The court of appeals declined to rely upon a Second Circuit case which supported plaintiff's position, and affirmed the trial court, holding that

[t]here is no equitable exception to the jurisdictional prerequisites of the Federal Tort Claims Act in this Circuit, and we decline to create one. While we are sympathetic to the plaintiff's position, we are not free to enlarge the consent to be sued which the government, through Congress, has limited.

*Id., citing Shelton,* 615 F.2d 713. In *Shelton,* the court stated (in what may have been *dictum* ) that "§ 2675 gives an agency only six months to take final action on a claim. *At the end of that time,* the injured party has recourse to suit in federal court." *Id.* at 715 (emphasis supplied).

There can be no doubt, then, that the statutes which establish the jurisdictional predicates of the Tort Claims Act are to be strictly construed. The first issue before the Court is thus whether when a plaintiff has timely filed her administrative claim, but failed to wait the requisite six months before instituting a civil action, we have authority to assume subject-matter jurisdiction over the case.

A reasonable point of departure is the language of § 2675(a) itself. There is no uncertainty: "An action *shall not be instituted*" until the claim has been filed and the six months waited. Courts have not hesitated to strictly apply the statute in cases where it appeared that, for example, plaintiffs have treated the administrative filing as simply an expedient. *See Insurance Company of North America v. United States,* 561 F.Supp. 106, 117–18 (E.D.Pa. 1983) (complaint filed three days after administrative filing, dismissed); *Schaefer v. Hills,* 416 F.Supp. 428–29 (S.D.Ohio 1976) (complaint filed two days after administrative filing, dismissed).

There are, however, cases which have held that the jurisdictional defect caused by premature filing can be "cured" by the

passage of time. In *McCormick v. Cooley*, 458 F.Supp. 776 (W.D.Pa.1978), claimants under the Act filed a complaint in state court to recover for an automobile accident. Nearly a year later, plaintiffs filed an administrative claim; the government then removed the case to the district court pursuant to § 2679, and moved to dismiss. The court denied the motion:

> We recognize that § 2675(a) prerequisites are jurisdictional requirements to maintaining a suit. However, since the six months of agency inaction has now elapsed, and no 'substantial progress' has been made in this case, the jurisdictional defect may be considered cured without the necessity of plaintiffs' refiling the suit.

*Id.* at 778 (citations omitted). The *McCormick* court placed principal reliance upon *Kubrick v. United States*, 581 F.2d 1092, 1098 (3d Cir.1978), *rev'd on other grounds*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a malpractice case in which the court excused, in *dictum* (as the issue was not contested by the government on appeal), filing of a lawsuit prior to institution of administrative proceedings. It is notable that *Kubrick* was reversed because, by permitting a plaintiff to file outside the 2-year limitations provision of 29 U.S.C. § 2674, the lower courts had expanded the Act's waiver of sovereign immunity.

Our research has disclosed no other cases in which the theory that jurisdictional defects may be "cured" by passage of time where no "reasonable progress" occurs in a lawsuit has been accepted. It would seem, under such a rule, that plaintiffs would, in most cases, be in a position to file their lawsuit within two or three months of the administrative filing. The United States has, in every civil action, 60 days in which to respond to the complaint, Rule 12(a), Fed.R.Civ.P.; experience tells us that the case in which "substantial progress" occurs within a month or two of the filing of an answer is the exception, rather than the rule.

The *Kubrick* rationale surely promotes economy. It also, however, arguably constitutes a judicial abrogation of the limitation on sovereign immunity contained in the statute. In addition, the six-month period is itself powerfully justified. The statute was enacted

> to improve and expedite the disposition of tort claims against the government by establishing a system of prelitigation administrative consideration and settlement of claims, thereby reducing court congestion and eliminating unnecessary litigation. To permit appellee to maintain this action would undermine the important policy in favor of prelitigation administrative review and possible settlements express in section 2675(a).

*Rosario*, 531 F.2d at 1233–34 (holding that Jones Act claimant against the government must comply with the terms of § 2675). We think it fair to assume that once the government has been served with a complaint, the administrative evaluation process halts; there is surely no obligation on the part of federal officials to pursue the same case on two fronts.

In sum, we find little support for plaintiffs' position on this question. Permitting claimants to file civil actions prior to expiration of the six-month period does not raise precisely the same sort of equitable exception expressly rejected by the Sixth Circuit in *Rogers*, 675 F.2d at 124. The issue, however—whether the jurisdictional prerequisites of the Tort Claims Act are subject to judicial modification—is surely related. Were it necessary for the Court to rule on this point, we doubt whether we could conclude that plaintiffs have met their burden of establishing subject-matter jurisdiction because of their failure to comply with § 2675(a).

Before so ruling, however, we would feel obliged to seek additional briefing from the parties on this issue; inexplicably, the government added it only as an aside, and plaintiffs simply ignored it. Because the question already fully submitted—the effect of the discretionary function exception on this litigation—is, as we find below, dispositive, we address that point in the interest of finality.

### III. *Discretionary Function*

■ 28 U.S.C. § 2680 provides that the government cannot be held liable for claims "based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The discretionary function exception is jurisdictional in the sense that a district court may not entertain claims which fall within the provisions of the exception. *E.g., Feyers v. United States,* 749 F.2d 1222, 1227 (6th Cir.1984); *Wright v. United States,* 719 F.2d 1032 (9th Cir.1983); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). That being so, when the government raises the applicability of such an exception by appropriate motion, the ultimate burden of proving its inapplicability, as in all matters jurisdictional, falls upon the plaintiff once the Court's jurisdiction is challenged. *See generally* 13 C.A. Wright, A.R. Miller, & E.H. Cooper, *Federal Practice & Procedure* § 3522 at pp. 62–64 (2d Ed.1984).

One of the areas of governmental activity courts have consistently held to be within the proscription of § 2680 has been the "failure of a regulatory agency to meet particular requirements desired by a member of the public when the desired action is not explicitly required by statute or regulation." *Reminga v. United States,* 631 F.2d 449, 456 (6th Cir.1980), *citing Miller v. United States,* 522 F.2d 386 (6th Cir.1975) (*per curiam*).

These holdings received implicit affirmance from the Supreme Court in *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). A unanimous Court held that the United States was not liable for allegedly insufficient pre- or post-certification procedures promulgated by the FAA. In language analogous to that employed in *Reminga,* 631 F.2d at 456, the Court noted that "whatever else the ... exception may in-

clude, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Varig Airlines,* 467 U.S. at ——, 104 S.Ct. at 2765. The Court thus reversed appellate rulings that the government could be held liable for failing to ensure before certification that trash receptacles in airplane lavatories were within applicable fire-hazard regulations, and for failing to ensure that a fuel line connected to an airplane's cabin heater complied with relevant airworthiness standards. *Id.* at ——, 104 S.Ct. at 2768.

In this case, plaintiffs allege that the FAA (1) failed to suspend the airworthiness certificate pertinent to the Robinson R–22 helicopter, and (2) failed to ensure that Robinson Helicopter Company, Inc. had adequate insurance to meet any liability which might arise from the allegedly defective nature of its products.

■ The latter assertion is readily disposed of. Plaintiffs point to no statute, regulation, or other authority for the proposition that the FAA has, under any circumstances, a duty to require and verify product liability insurance coverage on the part of aircraft manufacturers of private aircraft seeking airworthiness certification for their products. While plaintiffs asserted otherwise at hearing, we think that their effort is, quite simply, to make the United States the insurer of Robinson Helicopter Company; that effort fails. *See Garbarino v. United States,* 666 F.2d 1061, 1066 (6th Cir.1981). Plaintiffs argue (doc. 26 at 9–10) that because the Department of Transportation has promulgated requirements that motor carriers be insured as a prerequisite to their lawful operation, its failure to do so with regard to aircraft manufacturers is actionable. We find no merit to this argument, as the decision whether to impose a stricter set of regulations than those extant is clearly discretionary. *Miller,* 522 F.2d at 387. We turn to plaintiffs' other claim.

■ Plaintiffs recognize that *Varig Airlines* is not without relevance to their "ac-

tual knowledge" claim. They seek to avoid dismissal by reasoning as follows:

> Admittedly, had the crash of the R–22 [piloted by Dr. Porter] on October 21, 1982, been the first such accident, and if the FAA had no knowledge or notice of the defective design characteristics of the R–22, then the Supreme Court's decision in *Varig* may well be applicable. However, had the evidence in *Varig* established that the FAA knew that the Boeing 707 did not comply with fire protection standards, that fires had broken out on other aircraft of the same type as a result of this violation, and yet took no action to enforce compliance with the standards, the same result would not have been reached by the Supreme Court.

Doc. 26 at 7.

We understand plaintiffs' frustration, in light of their belief, which we accept as true, that the FAA was in the best position to put a halt to the use of R–22 helicopters pending correction of the alleged accident-causing defect once they allegedly had knowledge of numerous prior occurrences of crashes similar to Dr. Porter's, frustration compounded by the fact that the certificate was suspended just after the crash here in issue. At bottom, however, their concern is precisely with the sort of failure of a regulatory agency to regulate as plaintiffs wish, despite the absence of a statutory or other explicit duty, found to be excepted from liability in *Reminga*, 631 F.2d at 456, and *Miller*, 522 F.2d at 387.

The statute establishing the duty of the FAA with regard to aircraft manufacturers is 49 U.S.C. § 1421(a), which provides that the administrator of the FAA

> is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:
>
> (1) Such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft, aircraft engines, and propellers as may be required in the interest of safety;

> (2) Such minimum standards governing applicances as may be required in the interest of safety;
>
> \*     \*     \*     \*     \*     \*
>
> (6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Administrator may find necessary to provide adequately for national security and safety in air commerce.

Thus, under the statute, the FAA has the duty to promulgate minimum standards for certification of aircraft, and for their operation. However,

> [t]he FAA certification process is founded upon a relatively simple notion; the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator, while the FAA retains the responsibility for policing compliance.

*Varig Airlines,* —— U.S. ——, 104 S.Ct. at 2766–67. "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Id.* at ——, 104 S.Ct. at 2768, 81 L.Ed.2d 660.

We think the fact that the FAA is alleged to have known about each of the previous R–22 crashes is of little effect in analyzing this case. Plaintiffs point to no authority for the proposition that the FAA has a duty to withdraw or suspend the airworthiness certificates on aircraft which are involved in accidents; while such may occur, we think it clear that any such occurrence is solely within the discretion of the administrator, and whether her discretion was abused is not a question we are empowered to consider: We note, too, our view that in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the government had actual knowledge of the explosive characteristics of the ammonium nitrate fertilizer which exploded in Texas City, Texas; nonetheless, all decisions regarding processing and handling of the substance were ruled discretionary. Plaintiffs answer that the result in *Dalehite* would have been different had other

identical explosions occurred before the one at Texas City; again, this proposition is advanced without supporting authority, and we have found none.

In sum, we think that plaintiffs' effort to distinguish this case from *Varig Airlines* is futile. Plaintiffs cannot assert that the FAA wholly failed to regulate, as they allege that immediately after Dr. Porter's accident, the airworthiness certification for the R–22 was suspended. We have no doubt that the timing of regulatory decisions, just as the decision how to regulate, is discretionary. The protected discretion "is the discretion of the executive or the administration to act according to one's judgment of the best course." *Dalehite*, 346 U.S. at 34, 73 S.Ct. 956, 97 L.Ed. 1427.

We do not, then, have jurisdiction over the subject matter of plaintiffs' claims against the United States in this case, and the complaint against them is dismissed. We also dismiss, *sua sponte*, defendants Cardinal Air Training, Inc., Colerain Investment Company, George E. Schultz, and Robert P. Kuhn; it is clear that, absent the presence of the United States in this case, we lack subject-matter jurisdiction over those individuals and businesses, as the claims against them are not asserted under Federal law, and both they and plaintiffs are residents of Ohio. Finally, we ask plaintiffs to apprise the Court within 20 days of whether they intend to proceed in this matter as against the Robinson defendants.

SO ORDERED.