William P. CONRAD and Vickie
L. Conrad, Plaintiffs,

v.

TOKYO AIRCRAFT INSTRUMENT CO., LTD., United Instruments, Inc., Tokyo Kokukeiki Kabushi Kaisha d/b/a TKK, and United States of America, Defendants.

No. 97–C–073–S.

United States District Court,
W.D. Wisconsin.

Nov. 12, 1997.

Carroll E. Metzner, Bell, Metzner, Gierhart & Moore, S.C., Madison, WI, Richard B. Thaler, David W. Feeney II, Thaler & Thaler, Ithaca, NY, for William P. Conrad, Vickie L. Conrad.

Louis F. Raymond, Michael R. Wherry, Davis & Luelthau, S.C., Milwaukee, WI, for TKK, United Instruments, Inc.

Gregory S. Winton, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC,

Steve O'Connor, Asst. U.S. Attorney, Madison, WI, for U.S.

## MEMORANDUM and ORDER

SHABAZ, Chief Judge.

Plaintiffs William and Vickie Conrad bring this action against defendants United Instruments, Inc., Tokyo Aircraft Co., Ltd., Tokyo Kokukeiki Kabashiki Kaisha ("TKK"), and United States of America to recover damages resulting from injuries Mr. Conrad suffered in an airplane crash. Plaintiffs allege that a faulty altimeter manufactured and distributed by the defendant corporations caused the crash. They further allege that the United States knew of serious deficiencies in the TKK/United Instruments altimeter but failed to take corrective action required by federal rules and regulations. Plaintiffs seek to hold defendants liable on theories of negligence, strict product liability and breach of express and implied warranty.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The matter is presently before the Court on defendant United States of America's motion for partial summary judgment.

## FACTS

Plaintiffs contend that a reasonable jury could reach the following factual conclusions based on the evidence they will present in this matter. For purposes of this motion these factual conclusions are deemed true:

1) The United States had knowledge as early as 1974 that the TKK/United Instruments Model 5934 altimeter had defects which caused the altitude indicator to give erroneous readings, and which thus created an unsafe condition and the risk of aircraft accidents. The FAA issued two airworthiness directives—the first in 1974 and the second in 1986—in an attempt to correct this problem.

2) The United States thereafter learned of additional manufacturing and design defects which resulted in intermittent altimeter pointer sticking. The FAA performed an investigation and prepared a report dated July 31, 1990 in which it again identified and

acknowledged the sticking problem. However the FAA concluded that the problem of a sticking altimeter pointer did not constitute an unsafe condition.

3) The FAA's conclusion in its July 31, 1990 report conflicted with its stated reasons for having issued airworthiness directives in 1974 and 1986. The FAA articulated no reason for its change in position.

4) The FAA thereafter continued to receive additional reports from the field of problems with the TKK/United Instruments altimeters. In response the FAA asked Allan J. Lundquist to conduct a special investigation into the problem due to his "expertise in altimetry and barometry developed through years of FAA and industry experience."

5) Lundquist issued a report based on his investigation in March, 1993. The report identified specific defects in the TKK/United Instruments Model 5934 altimeter which caused the altimeter pointer to stick and which could permit "the aircraft and occupant [to] hit the ground while the pointers indicate that a safe altitude remains." Consistent with the FAA's previously issued airworthiness directives, Lundquist concluded that this was an unsafe condition which put pilots and passengers at risk.

6) Both Lundquist and FAA pilots concluded that other indicators of decreasing altitude were not sufficient to overcome the safety hazard presented by the sticking altimeter.

7) The FAA ignored the evidence of the unsafe altimeter condition that Lundquist generated. Immediately upon presenting his report to the FAA, the FAA advised Lundquist that his report would not be used in the FAA's ongoing investigation and that it would not become an official FAA record. Instead the FAA performed a routine certificate compliance survey for the express purpose of supporting its 1990 conclusion that no unsafe condition existed.

8) Prior to its 1993 investigation, the FAA relied on unreliable computerized "safety databases" which it knew were unreliable, to support its conclusion that "data trends do not provide that altimeter failures are occurring."

9) The FAA was aware in 1993 that inadequate "endplay" or "endshakes" in TKK/United Instruments altimeters could cause friction which made the altitude pointers susceptible to sticking. Despite this knowledge the FAA allowed United Instruments to alter its own manufacturing and specification process to provide for a tighter "endplay" adjustment specification, which operated to increase the friction.

10) The new assembly tolerances for endshake approved by the FAA are in direct conflict with United Instrument's own maintenance and overhaul manual specifications which by federal regulation (Federal Aviation Regulation 43.13) must be followed by certified repair stations throughout the United States.

11) As a result of the new manufacturing and specification process approved by the FAA, it became impossible for field repair agencies or persons to comply with FAR 43.13, which requires maintenance personnel to adhere to the methods, techniques and practices prescribed in the manufacturer's maintenance manual.

### MEMORANDUM

Defendant United States of America claims its conduct regarding the TKK/United Instruments altimeters as described by the plaintiffs involved discretionary acts and decisions implicating matters of public policy. The United States seeks judgment as a matter of law because the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), precludes civil actions against the government based on such conduct. Plaintiffs argue that the United States' conduct violated at least two non-discretionary duties imposed by law. Because Congress did not immunize the government from liability where an employee fails to take actions mandated by law, plaintiffs contend that a reasonable jury could find the government liable in this matter. Accordingly they ask the Court to deny the United States' motion for summary judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of

Civil Procedure. A genuine issue of material fact exists where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir.1996). Where the evidence presents no genuine issue of material fact the sole question on a motion for summary judgment is whether the moving party is entitled to judgment as a matter of law. *Id.*

The FTCA authorizes civil actions against the United States for certain negligent or wrongful conduct by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). However the FTCA does not authorize:

> (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Where this "discretionary function exception" applies, courts lack subject matter jurisdiction over the action. 28 U.S.C. § 1346(b)(1).

■ The discretionary function exception applies to (1) discretionary acts (2) that are based on considerations of public policy. *Grammatico v. U.S.,* 109 F.3d 1198, 1200–01 (7th Cir.1997). An act is discretionary if it involves "an element of judgment or choice." *Id.* at 1200, quoting *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). It is not discretionary if "a federal statute, regulation, or policy specifically prescribes [the] course of action for the employee to follow." *Id.* Not all discretionary acts are excluded from the FTCA. The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *Id.* at 1201, quoting *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74. Accordingly a discretionary act must involve considerations of public policy to fall within the discretionary function exception. *Id.*

*Discretionary Acts*

■ The United States acted within its discretion when it chose not to issue an Airworthiness Directive ("AD") or otherwise warn the aviation community regarding the safety of the TKK/United Instruments altimeters. On its face the decision called for the exercise of discretion. The government weighed competing evidence regarding the safety of the altimeters and rejected some evidence in favor of other evidence. This was a discretionary act. The government may have been negligent in rejecting the evidence Lundquist produced, but the negligence of the government's conduct is irrelevant if its behavior was discretionary. As the Seventh Circuit has observed, "[i]f the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all." *Cassens v. St. Louis River Cruise Lines,* 44 F.3d 508, 515 (7th Cir.1995).

The Court's conclusion that the government's decision was discretionary is supported by its review of the relevant statutory framework. Congress conferred considerable discretion on the Secretary of Transportation and the Administrator of the Federal Aviation Administration in the Federal Aviation Act of 1958, Pub.L. No. 85–726, 72 Stat. 731 (recodified as amended at 49 U.S.C. §§ 40101–49101). The Secretary is charged with the duty to promote air safety and may promulgate regulations, issue orders, or perform acts as "he shall deem necessary" to perform that duty. 49 U.S.C. § 40113. Similarly, the Administrator may certify the design or production of aircraft appliances such as altimeters "when the Administrator finds" that the appliances are properly designed and manufactured, perform properly and meet regulatory standards. 49 U.S.C. § 44704. These provisions grant broad, discretionary authority to the agents of the United States. They are not the specific, mandatory provisions that can give rise to a cause of action under the FTCA when they are breached.

■ Plaintiffs contend that the United States violated a mandatory duty imposed by Federal Aviation Administration Order 8040.1B (January 24, 1989) when it chose not to issue an AD regarding the TKK/United Instruments altimeter. In support they cite the foreword to the Order which states:

AD's provide an additional, indispensable level of regulation to ensure that products defined in FAR 39 remain airworthy at all times, despite the effects of such factors as material wear, fatigue, corrosion, and deterization. These factors may pose substantial hazards to the continued airworthiness of aircraft which can be prevented by the prompt dissemination of accurate AD's.

According to the plaintiffs, the government violated its own policy to identify, prevent and correct unsafe conditions in aeronautical products when it chose not to issue an AD. The government allegedly erred by basing its decision on trend data it knew was inaccurate and incomplete instead of relying on Lundquist's findings and recommendations.

FAA Order 8040.1B does not impose a specific, mandatory duty on the United States or its employees. Nothing in the text cited by the plaintiffs requires the United States to take any specific course of action. It merely discusses the importance of airworthiness directives. Indeed elsewhere in the foreword to the order it declares "[t]his order is intended as a working tool to provide meaningful guidance to FAA employees." A "working tool" that provides "guidance" does not impose a mandatory duty.

To the extent plaintiffs infer from the Order a mandatory government policy to "identify, prevent and correct unsafe conditions in aeronautical products," that generalized duty is insufficient as a matter of law to support their claim for damages. Such a general policy leaves too much room for judgment or choice to be deemed non-discretionary. *See Grammatico*, 109 F.3d at 1200 (where there is room for judgment or choice, there is discretion); *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 816, 104 S.Ct. 2755, 2765–66, 81 L.Ed.2d 660 (1984)(discretionary function exception precludes a tort action based on negligent conduct of FAA despite general duty of Secretary of Transportation to promote safety in air transportation).

■ Plaintiffs also contend that "by approving United Instruments' alteration of its manufacturing and specification process, in direct conflict with United Instruments' own maintenance and overhaul manual, the FAA

guaranteed that violations of FAR § 43.13 would occur." (Plaintiffs' Brief at 6). FAR § 43.13 provides in relevant part:

(a) Each person performing maintenance, alteration, or preventive maintenance on an aircraft, engine, propeller, or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, or other methods, techniques, and practices acceptable to the Administrator, except as noted in § 43.16.

The Court rejects this alternative basis for plaintiffs' claim because it fails to identify a specific, mandatory duty that the United States violated. At most plaintiffs have identified violations of the law by others, not by the United States. Such violations cannot be the basis for liability against the United States. Accordingly, even if the jury reaches the factual conclusions advanced by the plaintiffs, the necessary legal conclusions could not be reached.

*Considerations of Public Policy*

■ Decisions regarding the safety of aircraft instruments necessarily involve considerations of public policy. The FAA must not only weigh the evidence regarding safety, but must consider whether the benefits of correcting safety concerns justifies the costs. This is the kind of policy decision for which judicial second-guessing is particularly inappropriate. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991). Federal regulations governing the issuance of airworthiness directives provide "guidance" on this issue, but ultimately the decision is left to the discretion of agency employees. Accordingly, the Court presumes that the government's decision not to issue an AD concerning the TKK/United Instruments altimeters was grounded in considerations of public policy. Because that decision was also discretionary

the United States is entitled to judgment as a matter of law.

### ORDER

IT IS ORDERED that the motion of defendant United States of America for partial summary judgment is GRANTED.