GATX/AIRLOG CO., et. al., Plaintiffs,

v.

EVERGREEN INT'L AIRLINES, INC., Defendant.

Pemco Aeroplex, Inc., Third-party Plaintiff,

v.

United States of America, et. al., Third-party Defendants.

No. C–96–2494 WHO.

United States District Court, N.D. California.

Nov. 10, 1999.

Kathleen A. Howard, Stephen C. Neal, Scott D. Devereaux, Erin Verneris, Ruth Edman, Cooley Godward LLP, Palo Alto, CA, for GATX/Airlog Co., GATX Capital Corp.

Richard R. Mainland, Robert E. Darby, Aron M. Bookman, Fulbright & Jaworski, Los Angeles, CA, Dan J. Shulman, New York City, for Bank of New York.

C. Dana Hobart, James W. Mercer, Bruce Bennett, Ellen Keane, Hennigan

Mercer & Bennett, Los Angeles, CA, for Evergreen Intern. Airlines, Inc.

Stephen C. Kenney, George M. Moore, Damien P. Lillis, Kenney & Markowitz, LLP, San Francisco, CA, for Pemco. Aeroplex, Inc.

Paul M. Gordon, Gordon & Goodard, Oakland, CA, for Paul Gordon, Special Master.

## MEMORANDUM DECISION AND ORDER

ORRICK, District Judge.

In this third-party complaint for indemnity/contribution brought by third-party plaintiff Pemco Aeroplex, Inc. ("Pemco") against defendant the United States of America ("government"), the government now moves to dismiss the case for lack of subject matter jurisdiction. For the reasons set forth hereinafter, the Court grants the motion.

### I.

Because the parties are intimately familiar with the facts of the underlying consolidated litigation, the Court will not repeat them here.

Pemco filed its complaint against the United States on August 18, 1999. The complaint alleges three causes of action: 1) negligence; 2) negligent supervision of Steven Fox (a senior aerospace engineer for the Federal Aviation Administration ("FAA")); and 3) negligent retention of Steven Fox.[1]

### II.

The government advances four rationales for dismissing the complaint, three under Rule 12(b)(1) of the Federal Rules of Civil Procedure and one under Rule 12(b)(6). Because the Court has determined that the United States has not waived sovereign immunity for discretionary functions, the Court lacks subject matter jurisdiction over this action and therefore does not reach the other three proffered grounds for dismissal.[2]

### A.

The Court will first address whether the government may avail itself of the discretionary function exception in this case, and accordingly who has the burden of proving whether the discretionary function exception applies.[3] The plaintiff bears the burden of persuading the Court that it has subject matter jurisdiction, but in this Circuit the government bears the burden of proving the applicability of the discretionary function exception under the FTCA. *Prescott v. United States,* 973 F.2d 696, 702 (9th Cir.1992); *Laurence v. Unit-*

---

1. On August 16, 1999, the Court granted Pemco's motion for leave to file a third-party complaint against the government, stating that "[u]nder *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the United States cannot avail itself of the discretionary function exception to liability in this case." (*See* Order filed August 16, 1999.) The Court acknowledges that this statement was erroneous, and accordingly vacates that portion of its August 16 Order.

2. Two of the government's other arguments presuppose that Washington law applies in this case; the Court will not yet decide this important choice-of-law question because it has not yet been fully briefed.

3. The Court here applies the standard for dismissal under Rule 12(b)(1). Pemco asserts that it would be "premature" to rule on the United States' motion to dismiss, and that the Court should apply the summary judgment standard because the facts relating to jurisdiction and liability are so closely intertwined that the Court cannot decide jurisdiction without deciding liability and vice versa. However, under Rule 12(h)(3), the question of subject matter jurisdiction may be raised at any time, so the motion is not premature. The summary judgment standard is not appropriate here because the Court can determine whether the United States is immune from suit without doing the factual analysis necessary to resolve the merits of the Pemco's negligence claims. The question here is whether the government actors had discretion, not whether they were negligent.

*ed States,* 851 F.Supp. 1445, 1450 (N.D.Cal. 1994).

The Federal Tort Claims Act ("FTCA") authorizes suits against the United States for damages

> "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b).

Congress excepted several important classes of tort claims from the Act's broad waiver. Section 2680(a) of Title 28 of the United States Code, provides that the FTCA shall not apply to

> "[a]ny claim based upon an act or omission of an employee of the Government ... *based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.*

28 U.S.C. § 2680(a) (emphasis added).

"The discretionary function exception, embodied in the second clause of § 2680(a), marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines,* 467 U.S. at 808, 104 S.Ct. 2755 (holding that discretionary function exception precluded tort actions based on FAA's alleged negligence in using a "spot check" system to certify certain aircraft for use in commercial aviation).

■ The determination whether the exception applies requires the Court to analyze two questions. First, does the challenged action involve an element of choice or judgment? If not, when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, the exception will not apply and the Court's analysis need go no further. *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1025 (9th Cir.1989) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). Second, is the judgment at issue the sort that Congress intended to shield? If the judgment involves considerations of social, economic or political policy, the exception applies. *In re Glacier Bay,* 71 F.3d 1447, 1450 (9th Cir.1995). The exception thus protects those decisions that Congress sought to shield from judicial second guessing.

■ Finally, the Court must examine each claimed negligent act, and determine whether "each person taking an allegedly negligent action had discretion," that is, whether the action was a matter of choice for that employee, not whether the government as a whole had discretion. *Id.* at 1451.

Two cases have directly considered the question of whether the FAA's decision not to issue an airworthiness directive is a discretionary function. Both cases determined that such a decision is a policy decision and not a ministerial act. *Smolar–Hutton v. Beech Aircraft Corp.,* 647 F.Supp. 1348 (D.N.J.1986); *Conrad v. Tokyo Aircraft Instrument Co.,* 988 F.Supp. 1227 (W.D.Wis.1997) (holding that because FAA Order was intended to be a "working tool" that provides "guidance," rather than imposing a mandatory duty, the decision not to issue an AD was discretionary).

### B.

■ Pemco attempts to characterize FAA Orders as mandatory directives, because failure to comply with a rule that confers no discretion falls outside the discretionary function exception. *Kennewick,* 880 F.2d at 1025; *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. At the time of the development and issuance of the AD, the FAA had a manual to provide procedures

for the development, issuance, and distribution of ADs (FAA Manual 8040.1). Pemco alleges five "violations of mandatory FAA orders by Senior Engineer Steven Fox and others in performing the investigation that led to the issuance of A.D. 96–01–03." (Opp'n at 10.) Thus, the Court must consider whether any of the FAA Orders at issue are indeed "mandatory," or whether they conferred discretion upon each actor. Examination of the relevant statutes, regulations, FAA Orders, and policies (found at 49 U.S.C. §§ 106(f), 44701, 40113 and 14 C.F.R. parts 11 & 39) reveals that like in *Conrad*, the FAA Orders in this case are policy guidelines, not mandatory directives.

Congress granted the Administrator of the FAA the responsibility to "promote safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a). Under the statute, the Administrator is to prescribe minimum safety standards, and to carry out her work in "a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation." 49 U.S.C. § 44701(c). The Administrator may prescribe regulations and issue orders she "considers necessary" to carry out the agency's function. 49 U.S.C. § 40113(a). The Administrator may delegate her powers and duties, and has delegated the authority to issue ADs. 14 C.F.R. § 11.81.

The federal regulations governing the issuance of ADs also grants discretion to FAA employees:

> This part prescribes airworthiness directives that apply to aircraft, aircraft engines, propellers, or appliances (hereinafter referred to in this part as "products") when—
>
> (a) An unsafe condition exists in a product; and
>
> (b) That condition is likely to exist or develop in other products of the same type design.

14 C.F.R. § 39.1.

The regulations go on to state:

> This subpart identifies those products in which the Administrator has found an unsafe condition as described in § 39.1 and, as appropriate, prescribes inspections, and the conditions and limitations, if any, under which those products may continue to be operated.

14 C.F.R. § 30.11.

1.

In this case, allegation-by-allegation analysis reveals that the FAA employees had discretion, and that their judgments were of the type Congress intended to shield.

1. *Violation of FAA Order 8100.5, which required the A.D. investigation to be conducted by the Atlanta Aircraft Certification Office, not the Seattle ACO.*

██ Pemco alleges a violation of an internal agency procedure that purportedly required FAA offices in Atlanta, not Seattle, to prepare the AD. (Compl.¶ 56(b).) In support of this allegation, Pemco cites a 1982 FAA order that established working relationships between the newly-created directorates and the rest of the FAA. This Order does not purport to set for policy with respect to anything other than the internal working relationships among FAA offices and disavows itself as a mandatory procedural guide. For example, the Order lists the goals the Directorates were established to promote, including "maintain or enhance the current levels of safety and public service," and states that "the procedures in this Order should be weighed against these goals, and changes made when improvements will result." (Mot. Ex. 6 at 7.) The FAA may thus in its discretion opt to change the procedures in the Order when it deems necessary. The Order also states, "[t]his order is intended to define standard procedures only to the degree that national standardization is required. The Directorates will supplement this order to further extend the procedures provided herein for the products over which they have type certification

accountability." (*Id.* at 4). The Order thus grants discretion to the employees of the Seattle Transport Directorate to take control of an AD involving a 747, for which it had type certificate accountability. (Id. at Ex. 5 ("Airworthiness Directives Manual Foreword").)

The Order explicitly refers to the Airworthiness Directives Manual to establish governmental policy concerning the procedures of preparing ADs in 1995 and 1996. The Order is thus not intended to establish policy in this area; instead, it states that "the detailed procedures governing the preparation of AD's are the responsibility of the Director of Airworthiness with the concurrence of the chief Counsel, and are contained in Order 8040.1, Airworthiness Directives." (Mot. Ex. 6 at 251.) The Order must thus be read in conjunction with the other regulations, which place primary responsibility for the investigation, drafting, review, and issuance of an AD with the Directorate, as well as grant the Directorate the authority to extend or change internal procedures in the interests of safety. *Lockett v. United States*, 938 F.2d 630, 636 (6th Cir.1991) (reading seemingly mandatory language in agency manuals in conjunction with statutory and regulatory schemes granting discretion to agency employees). Thus, Pemco fails to allege violation of a specific, mandatory directive relating to which office of the FAA conducted the investigation of whether to issue the AD.

2. *Failure to ensure that the substance of AD was "technically accurate, adequate and completely justified," as required by FAA Order 8040.1B.*

At the hearing, the Court asked Pemco's counsel to point out where the phrase "technically accurate, adequate and completely justified" appears in the applicable FAA Order. Counsel stated that he was unable to provide the citation at that time, but that he would provide it to the Court.

The next day, counsel filed a supplemental citation to FAA Order 8040.1B. Exhibit A to that supplemental citation is a 1989 version of Order 8040.1B with the appropriate phrase highlighted. It appears, however, that the 1989 version of this Order is outdated; in support of its motion to dismiss, the United States submitted a 1994 version of Order 8040.1, entitled "Airworthiness Directives Manual," which does not contain the highlighted phrase. (Mot.Ex. 5.) The Court notes that AD 96–01–03 was issued in January of 1996; thus, the 1994 version of the Order applies. Further, the Court finds that Pemco's submission of the outdated version of the document is misleading.[4] Pemco's supplemental citation is therefore stricken.

■ There is no requirement in the statutes, regulations, or manual that ADs be technically perfect. In fact, Section 3 of the Airworthiness Directives manual, "Changes to Previously Issued AD's, sets forth procedures for removal of an AD "if the information the AD was based on" is found to be in error." (Mot. Ex. 5 at 24.) Thus, the allegation that the substance of the AD was not technically accurate or fully justified is not evidence of failure to follow a mandate. Rather, Pemco essentially alleges that the FAA behaved unreasonably in its investigation, possibly disregarding evidence that would have demonstrated that the design was actually safe. There is, however, no requirement that the government behave reasonably: Pemco's disagreement with how the FAA employees exercised their discretion is not actionable.

■ 3. *Failure to establish that an "unsafe condition" existed in the converted freighter aircraft before issuing the AD as required by FAR ¶ 39.1 (14 C.F.R. § 39.1) and by FAA Order 8100.5.* The procedures for issuing an AD involve technical decision making initiated by an ACO

---

4. The submission of the 1989 Order is particularly misleading given that Pemco knew of the 1994 version in the government's papers and failed to offer any explanation for the discrepancy.

engineer like Mr. Fox. (Mot. Ex. 5 at 31.) The determinations of whether an unsafe condition existed and whether that condition was likely to exist in other products of the same type design were left entirely up to the FAA employees' discretion. 14 C.F.R. § 39.1.

The AD explicitly discloses the FAA's concern that the airplanes were incapable of carrying their currently certified payload limits. Pemco doesn't deny that the FAA had the discretion to investigate whether an unsafe condition existed, but rather takes issue with the reliability of the FAA's determination that it did.

■ 4. *Using an AD to effectively "revoke" the STCs in violation of FAA Manual M–8040.1.* The Manual states that "an AD cannot be used to "revoke" an STC or field approval . . . ." (Mot. Ex. 5 at 78.) No mandatory provisions of the applicable statutes, regulations, or manuals, however, prohibited the FAA from placing weight restrictions on unsafe airplanes. None of the statutes, regulations, or manuals state that placing weight restrictions on aircraft amounts to a "revocation" of an STC. Under the relevant laws and policies, the FAA had discretion to issue an AD once it determined that an unsafe condition existed.

5. *Failing to provide the parties with sufficient reliable information regarding corrective measures, which needlessly prolonged the down time and expense of developing alternative means of compliance.* Pemco fails to allege any specific violation of a mandatory rule, law, or policy that prohibits delay and expense associated with developing alternative means of compliance. This claim must fail as a matter of law because Pemco has not succeeded characterizing the FAA employees' actions as violations of mandatory duties under the *Berkovitz* decision. 486 U.S. at 536, 108 S.Ct. 1954.

2.

■ The remaining question in the discretionary function analysis is whether the challenged actions are of the type that Congress intended to shield; that is, whether they are susceptible to policy analysis. *United States v. Gaubert*, 499 U.S. 315, 333, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

The government notes that every time the FAA issues an AD it is acknowledging that an aircraft or design previously approved by the FAA is not perfect. (Reply at 8.) In this case, the AD was issued before any accident occurred; in the *Conrad* and *Smolar* cases, the AD never issued. The decision in each of these cases is the same: whether to issue an AD. Reasonable people may differ over the propriety of the rule-making action adopted in the present case, just as they may differ over the effectiveness of the spot-checking method in *Varig Airlines;* it is each actor's exercise of discretion, not the ultimate result, however, that matters in the discretionary function analysis.

In this case, the challenged actions are the steps taken by FAA officials that lead to the issuance of the nationwide safety order. This decision necessarily involves weighing economic and social considerations. The AD development and review process guidelines detail a few of these considerations: public safety, extent of the possible design problem, whether grounding aircraft is necessary, urgency of the problem, and impact on other entities. (Mot. Ex. 5 at 31–32.) In short, every time the FAA investigates whether to issue an AD, it is weighing public safety concerns against social costs of its decision; this is a policy analysis. For these reasons, the United States' motion to dismiss is granted.

C.

■ Pemco's negligent supervision and retention claims are fatally flawed because Pemco fails to allege any federal statute, regulation, or policy that would have required Steven Fox's supervisors to take any particular action. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954. The Court there-

**1010**

fore finds that the actions of the FAA employees in supervising Mr. Fox with respect to the AD, and in retaining him to perform his job, were also discretionary. *Gager v. United States,* 149 F.3d 918, 920–21 (9th Cir.1998) (stating that "in the absence of any statute, regulation, or policy requiring such training," the decision not to require bomb-detection training for postal employees "plainly involves judgment or choice."). Allowing these claims to proceed would effectively allow Pemco to circumvent the discretionary function exception. Pemco's negligent supervision and negligent retention claims are therefore dismissed.

Accordingly,

IT IS HEREBY ORDERED that:

1. The United States' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

2. The third-party complaint is dismissed for lack of subject matter jurisdiction, with prejudice.

3. Pemco's supplemental citation filed November 5, 1999, is stricken because tends to mislead the Court regarding which version of FAA Order 8040.1 was in effect at the relevant time.

4. For the reasons stated at the hearing on November 4, 1999, AIA's motion to substitute Kalitta Air, A.L.C., for itself in case no. 97–0378 is GRANTED. AIA is granted leave to amend the complaint for the limited purpose of indicating the substitution. Kalitta Air will be bound by AIA's discovery responses to date.